IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM S. SMITH, | : | 08-cv-1905 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| FEDEX FREIGHT EAST, INC., | : | |
| HARTFORD LIFE AND | : | |
| ACCIDENT INSURANCE CO., | : | |
| and GROUP LONG TERM | : | |
| DISABILITY PLAN FOR | : | |
| EMPLOYEES OF FEDEX | : | |
| FREIGHT EAST, INC. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**February 1, 2010**

**I.    INTRODUCTION**

Before the Court in this employee-welfare action governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA") are two cross-motions for summary judgment.  (Docs. 46, 50).  For the reasons articulated in this Memorandum, the Court will grant Defendant Hartford Life and Accident Insurance Company's ("Defendant" or "Hartford")  Motion for Summary Judgment ("Defendant's Motion") (Doc. 46), and, accordingly, deny Plaintiff William Smith's ("Plaintiff" or "Smith") Motion for Partial Summary Judgment

1

("Plaintiff's Motion") (Doc. 50). An appropriate Order dismissing the action shall enter.

## II.     PROCEDURAL HISTORY

Plaintiff initiated this action on December 16, 2008, with the filing of a Complaint against Defendant Hartford, FedEx Freight East, Inc. ("FedEx"), and Group Long Term Disability Plan for Employees of FedEx Freight East, Inc. (Doc. 1). Plaintiff asserts that Hartford's decision to deny him Long-Term Disability ("LTD") benefits under his employee welfare plan was arbitrary and capricious and seeks relief pursuant to 29 U.S.C. § 1132. (Doc. 1). On December 22, 2008, Plaintiff moved to supplement the administrative record of his claim. (Doc. 17). After full briefing, the Court granted in part and denied in part Plaintiff's Motion to Supplement. (Doc. 37). We allowed Plaintiff to supplement the record with one doctor's medical examination report[1] and remanded Plaintiff's claim to Hartford for reconsideration in light of the supplemental record. (Doc. 37). Hartford again denied Plaintiff LTD benefits.

On June 18, 2009, the Court approved a stipulation that dismissed from the action without prejudice FedEx and Group Long Term Disability. (Doc. 44).

---

[1] The extent of the administrative record and details of specific documents located within it are described *infra* in Section III.

Subsequently, Defendant filed its Motion for Summary Judgment (Doc. 46), brief in support thereof (Doc. 47), supporting exhibits (Doc. 48), and Statement of Material Facts ("Defendant's SOMF") (Doc. 49) on July 10, 2009. Plaintiff filed his Motion for Summary Judgment (Doc. 50) and Statement of Material Facts ("Plaintiff's SOMF") (Doc. 51), on that same date. Plaintiff filed a brief in opposition to Defendant's Motion on July 23, 2009. (Doc. 54). Defendant filed a brief in opposition to Plaintiff's Motion (Doc. 55) and a response to Plaintiff's SOMF (Doc. 57) on July 24, 2009. Neither party elected to file a reply. Thus, this matter is ripe for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

Where, as here, detailed below, material questions as to "reasonableness" have been fully developed on the record, the "Court may appropriately grant summary judgment if a bench trial would not enhance its ability to draw inferences and conclusions." *Chao v. Local 54, Hotel Employees and Rest. Employees Int'l Union*, 166 F. Supp. 2d 109 (D.N.J. Oct. 9, 2001) (citing *Coats & Clark, Inc. v. Gay*, 755 F.2d 1506, 1509-10 (11 th Cir. 1985)).

## III. FACTUAL BACKGROUND

The following facts and inferences are drawn from the record[2] and the submissions of the parties and, unless otherwise indicated, are undisputed.

Hartford issued a long-term disability ("LTD") benefit plan ("the Plan") to FedEx, under which benefits to employees of FedEx are paid directly out of Hartford's fund and Hartford has full discretion to interpret the Plan and determine eligibility. (HLI0032-33). Benefits are payable when an insured becomes disabled

---

[2]The Administrative Record shall be cited as "HLI" followed by the corresponding page number.

while under the Plan. Under the Plan, disabled means that over the elimination period, or twelve months, the insured is prevented by "(1) accidental bodily injury; (2) sickness; (3) mental illness; (4) substance abuse; (5) or pregnancy from performing one or more essential duties of [the insured's] occupation." (HLI0020). The Plan further provides that "[t]he failure to pass a physical examination required to maintain a license and perform the duties" of the occupation alone will not render a person disabled for purposes of receiving benefits. (HLI0020).

Plaintiff was formerly employed by FedEx as a truck driver. (Doc. 49 ¶ 1).[3] FedEx purchased a long-term disability contract for the benefit of employees through Defendant Hartford. (Doc. 51, Plaintiff's SOMF ¶ 1; HLI0001). After about five years of employment with FedEx, Plaintiff suffered a seizure while at work on January 13, 2007. (Doc. 51, Plaintiff's SOMF ¶ 4). Before the instant seizure, Plaintiff had advised his employer that he had a seizure prior to the commencement of his employment with Fedex and had been taking medication continuously since that initial seizure. (Doc. 51, Plaintiff's SOMF ¶ 4, HLI0097). Because of the instant seizure, Smith fell off of a truck lift, hit his head, and was

---

[3] We preliminarily note that Plaintiff did not file a Counter Statement of Material Facts in response to Defendants' Statement of Material facts re Defendants' Motion for Summary Judgment. Plaintiff did, however, file a Statement of Material Facts pertaining to his Motion for Summary Judgment. (Doc. 51).

taken to the hospital by ambulance. (Doc. 51, Plaintiff's SOMF ¶ 4). Plaintiff ceased working on January 15, 2007 and completed a Disability Claim form on January 31, 2007. (Doc. 49, Defendants' SOMF ¶ 6).

Plaintiff followed up with a neurologist, Dr. Zhenhui Li ("Dr. Li" or "Plaintiff's doctor") regarding his injury on March 16, 2007. (Doc. 51, Plaintiff's SOMF ¶ 5). Via a letter, Dr. Li certified to FedEx that Smith would be unable to work from March 16, 2007 through June 18, 2007 because of a "medical condition." (Doc. 51, Plaintiff's SOMF ¶ 5; Doc. 57, Defendant's Response ¶ 5; HLI0096). Dr. Li released Plaintiff to work "without restrictions" after reevaluation on June 15, 2007. (Doc. 49, Defendant's SOMF ¶ 10; Doc. 51, Plaintiff's SOMF ¶ 6; HLI0094).

Plaintiff was again examined on June 26, 2007 by a FedEx doctor, Dr. Robert Wagner ("Dr. Wagner"). (Doc. 49, Defendant's SOMF ¶ 11). Dr. Wagner agreed with Dr. Li that Smith could return to work without restriction because of his condition. (Doc. 49, Defendant's SOMF ¶ 11; HLI0116). Dr. Wagner did, however, note that because Plaintiff lost his Commercial Driver's License ("CDL"), he could not perform his duties as a road driver. (Doc. 49, Defendant's SOMF ¶ 11; HLI0116). Therein lies the ultimate dispute: Plaintiff maintains that Dr. Wagner "concluded that, given the seizure disorder and medication, Mr. Smith

7

did not meet federal standards to be a commercial driver." (Doc. 51, Plaintiff's SOMF ¶ 8). Defendant contends that "Dr. Wagner concluded that, because plaintiff's [CDL] was revoked, he did not meet the standards of performing his job at FedEx. Dr. Wagner did not conclude that plaintiff's seizure disorder or his medication rendered him unable to drive a commercial vehicle." (Doc. 57, Defendant's Response ¶ 8). Indeed, at one point on the Medical Examination Report, Dr. Wagner indicated that the condition is not "likely to hamper the driver's ability to control and/or safely operate a commercial motor vehicle," yet at another certifies that Plaintiff "does not meet standards" for commercial driver fitness, presumably because of the seizure disorder. (HLI0116).

As part of the disability application that Plaintiff submitted to Hartford, FedEx indicated that Smith was a road driver, stopped working because of seizures, and that his job could not be modified to accommodate his disability. (Doc. 51, Plaintiff's SOMF ¶ 9; HLI0079-84). Plaintiff indicated on the application that he was unable to continue working because of his medication and because he could lose consciousness. Plaintiff further indicated that his condition made him change his job because he was "not allowed to drive a commercial vehicle." (HLI8802). As part of the same application, Dr. Li completed an Attending Physician's Statement of Disability ("APS") indicating that Smith's

8

condition was the result of illness, that his primary diagnosis was a seizure disorder, and that his secondary diagnosis was arteriovenous malformation. (HLI0086). While Dr. Li asserted that Plaintiff was under no restriction related to standing, walking, sitting, lifting or carrying, reaching or working overhead, pushing, pulling, or keyboard use, he indicated that the condition limited Plaintiff's driving because he "can not drive [a] commercial vehicle." (HLI0087).

On August 14, 2007, Hartford denied Plaintiff's claim for LTD benefits. (Doc. 51, Plaintiff's SOMF ¶ 12). Specifically, Hartford stated in the denial letter that Hartford considered all of the evidence in the claim file and determined the file did not show that Smith was unable to perform the necessary duties of his occupation on a full-time basis. (HLI0076). Hartford noted that, pursuant to the Plan, a claimant's failure to pass a physical examination required to maintain a license does not alone mean that the claimant is disabled. (HLI0074).

Smith entered an appeal of that denial on October 29, 2007, asserting that he performed no duties that did not require the use of a commercial driver's license, and therefore he was, in fact, unable to perform the essential duties of his job. (Doc. 51, Plaintiff's SOMF ¶ 13). To support Plaintiff's first appeal, Dr. Li provided a letter that detailed Plaintiff's history of a seizure disorder and asserted that Smith was completely disabled. (HLI0070). Dr. Li maintained in the letter

9

that he only released Smith back to work because he hoped that, although Smith could not drive a commercial vehicle, FedEx would assign Smith to a different job. (HLI0070). Hartford again denied Plaintiff's claim on December 10, 2007. The next month, Plaintiff asked for an additional ninety days to include more medical information in his appeal, and that request was denied. (HLI0057; HLI0054).

On April 16, 2009, the Court ordered that the record be supplemented with the June 26, 2007 examination report by Dr. Wagner. (Doc. 37). After supplementation, Hartford again considered Smith's claim and again denied it. (HLI0113).

## IV. DISCUSSION

ERISA does not set out the standard of review for actions brought under 29 U.S.C. § 1132(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that, when analyzing a challenge to a denial of benefits in these actions, a district court must review the plan administrator's decision under a de novo standard of review, unless the plan grants discretionary authority to the administrator to determine eligibility for benefits or interpret terms under the plan. 489 U.S. 101, 109 (1989). If the administrator has such discretionary authority, the "administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997) (quoting

*Firestone*, 489 U.S. at 111)).

Based on the foregoing, a district court reviews an administrator's decision or denial under an arbitrary and capricious standard of review. *See Ford. v. Unum Life Ins. Co. of Am.*, 2009 U.S. App. LEXIS 24514 (3d Cir. Nov. 9, 2009) (citing *Abnathya v. Hoffman LaRoche, Inc.*, 2 F.3d 40 (3d Cir. 1993)); *see also Keating v. Whitmore Mfg. Co.*, 186 F.3d 418, 420-21 (3d Cir. 1999) ("Our standard of review is abuse of discretion because the plan gives broad discretion to the Committee to determine benefits. Therefore, we must affirm unless we find the Committee's decision to be arbitrary and capricious."). "Under the arbitrary and capricious standard, 'the district court may overturn a decision of the plan administrator only if it is without reason, unsupported by the evidence, or erroneous as a matter of law.'" *Mitchell*, 113 F.3d at 439 (quoting *Abnathya*, 2 F.3d at 45). As this review is deferential to the plan administrator, the district court must not substitute its own judgment for the judgment of the administrator. *See id.*

In *Firestone*, the Supreme Court also stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest[4], that conflict must be weighed as a factor in determining whether there is

---

[4] A conflict of interest for these purposes exists where the employer both funds the plan and evaluates the claim.

11

an abuse of discretion." *Firestone*, 489 U.S. at 115. Subsequent decisions have shed light on how such a conflict should be weighed. In *Metropolitan Life Ins. Co. v. Glenn*, the Supreme Court interpreted the relevant language in *Firestone* to mean that a court should not consider the administrator's potential conflict of interest in *formulating* the standard of review, but rather should consider that conflict in *applying* the standard to determine if the administrator abused its discretion. 128 S. Ct. 2343, 2350 (2008). As such, an administrator's conflict of interest is just one of many factors that a district court can, and should, consider in evaluating the reasonableness of the decision using the traditional arbitrary and capricious standard of review.

Here, the Plan grants to Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (HLI0019). As such, the decision of the plan administrator to deny Smith LTD benefits is subject to the arbitrary and capricious standard of review, and therefore we should "affirm [the administrator's] determination as long as it is supported by substantial evidence in the record, even if the record also contains substantial evidence that would support a different result." *Johnson v. UMWA Health and Retirement Funds*, 125 Fed. Appx. 400, 403 (3d Cir. 2005) (citing *Moats v. United Mine Workers of Am. Health and Ret.*

*Funds*, 981 F.2d 685, 689 (3d Cir. 1992); *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)) (non-precedential opinion); *see also Nyman v. Liberty Mut. Assurance Co. of Boston*, 2005 U.S. Dist. LEXIS 33542, *21 (M.D. Pa. Sept. 7, 2005) (although this court was applying the "heightened" arbitrary and capricious standard that was mandated by the Third Circuit at that time, the applicable standards detailing the quantum of evidence necessary under the arbitrary and capricious standard of review detailed in that opinion are instructive). As noted previously, we must review Hartford's decision on the basis of the administrative record before Hartford at the time of the decision to deny Plaintiff's claim. *See Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir. 2004) (as with most other precedential opinions cited in this Memorandum, part of the opinion of the court was rendered inoperative because of the Supreme Court's decision in *Glenn*. However, the present proposition remains applicable); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997).

Based on the aforementioned standards, we are tasked with determining whether Hartford's decision to deny Plaintiff LTD benefits was without reason. Stated differently, we must determine whether Hartford's conclusion that Plaintiff's doctors determined that the only reason he was unable to work was by

virtue of losing his CDL is supported by substantial evidence on the record and must determine whether Hartford's inherent conflict affected their determination.

Based upon the evidence on the record, together with the arguments maintained in the briefing of these motions, we are unconvinced that the structural conflict that existed because Hartford both funded the Plan and made determinations of eligibility influenced their determination to deny Plaintiff's LTD benefits. As Defendant notes, there is no evidence that Hartford has a history of biased claims administration. (Doc. 47 p. 13). Furthermore, Plaintiff neglects to allege any evidence of Hartford's inherent conflict influencing the outcome beyond the fact that the outcome was not favorable to the Plaintiff. Thus, although we do bear in mind the conflict that exists while evaluating the evidence, that conflict shall not be given special weight in determining whether Hartford's decision was arbitrary and capricious.

Upon review of the administrative record, we find that Hartford's decision to deny Plaintiff LTD benefits was not arbitrary and capricious. Granted, the Court is aware the a different outcome *could* have been reached. Nonetheless, the record does not establish that the outcome that was reached was without reason, erroneous, or unsupported by the evidence.

First, and notably, Plaintiff had the same seizure disorder that he claims

14

rendered him disabled for the entire time he was employed as a driver for FedEx. (HLI0097). Further, after Plaintiff's seizure, subsequent injury, and brief period of leave from his position, Plaintiff's doctor cleared him to return to work without restriction. (HLI0094). The first time Hartford considered and denied Plaintiff's eligibility for LTD benefits, Hartford considered only the medical report from Dr. Li and did not include the report from Dr. Wagner on June 26, 2007. Although Plaintiff requested that the Court order supplementation of the record with a plethora of documentary evidence, the only evidence appropriate for supplementation was Dr. Wagner's report. (*See* Doc. 37, pp. 4-9 (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir. 2004) noting that "the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation" yet allowing Dr. Wagner's report because the parties agreed that it was mistakenly excluded from the initial record)).

    We note that the administrative record, especially as supplemented by Dr. Wagner's report, demonstrates a reasonable interpretation in favor of each party. Indeed, that report seems to state two differing conclusions: Dr. Wagner first checked a box indicating that Plaintiff's condition was not "likely to hamper the driver's ability to control and/or safely operate a commercial motor vehicle"

(HLI0116), and then related no abnormalities in Plaintiff's physical examination. (HLI0117). Dr. Wagner also commented that Plaintiff had a "controlled seizure disorder, released without restrictions by neurologist." (HLI0117). However, Dr. Wagner elsewhere posited that Plaintiff did not meet the standards under 49 C.F.R. § 391.41 for a commercial driver certificate by checking a box, but added no elaboration in support of that conclusion. (HLI0117). As such, the administrative record supplemented with Dr. Wagner's report reveals a stark ambiguity as to whether Plaintiff's seizure disorder rendered him unable to work or, alternatively, whether his inability to work stemmed solely from the loss of his CDL. Either interpretation would be reasonable under the facts within the record. Therefore, it is a reasonable interpretation of the record that Plaintiff's subsequent "disability" stemmed from his loss of his CDL as opposed to the actual effects of the seizure disorder. That is, the seizure disorder did not render him disabled since before and prior to losing his CDL, he was released to work without restriction. Applying Hartford's reasonable interpretation of the record to the Plan, it was consequently reasonable for Hartford to deny Plaintiff's LTD benefits as the loss of his CDL rendered him unable to perform his essential duties, not his seizure disorder. (*See* HLI0020, discussed *supra*). Plaintiff has failed to point us to any evidence to suggest that Hartford's determination was without reason, and our own review of

16

the record demonstrates that it was not erroneous. We note that under this standard of review we may not supplant Hartford's decision with our own, and because it was not unreasonable we are bound to accept their determination.

While there is unquestionably evidence in the administrative record that could support the interpretation that Plaintiff advocates, as aforestated it is not our task to decide whether a different result could have been reached. Rather, we are to decide whether Hartford's denial of LTD benefits was arbitrary and capricious. We find that it was not.

## V. CONCLUSION

For the reasons articulated above, the Court finds that Defendant did not abuse its discretion in denying Plaintiff's LTD benefits after determining that Plaintiff was not disabled pursuant to the requirements of the Plan. Therefore, we will grant Defendants Motion (Doc. 46), deny Plaintiff's Motion (Doc. 50), dismiss the complaint, and close this action. An appropriate Order shall enter.